# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
### MANHATTAN

| | |
|---|---|
| Duval Clemmons, individually and on behalf of all others similarly situated, | 1:22-cv-00355 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Upfield US Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.       Upfield US Inc. ("Defendant") manufactures, labels, markets, and sells vegetable oil spread identified as Plant Butter Made With Olive Oil, with pictures of olives, promoted as "Dairy Free," with green-themed packaging under its Country Crock brand ("Product").



2.       Since the dawn of recorded history, humas have enjoyed butter, made from fresh cream and salt, on a farm.

3.       For the past 150 years, imitators of butter have attempted to sell yellow-colored

blends of beef tallow and vegetable oil to consumers as butter, through the product known as margarine, required to have 80% or more fat.

4.      According to USDA data, margarine consumption in 2017 was 3.5 pounds per person, the lowest since 1942, while butter consumption exceeded 5.7, the highest level since 1968.

5.      This change is partly attributable to consumers becoming aware of margarine's harmful trans fats, made from hydrogenated and interesterified vegetable oils, in the presence of nickel and cadmium.

6.      A report by consumer research firm Mintel stated that "[A]s consumers increasingly turn to butter over margarine/spreads for its natural appeal, spread brands are challenged to provide products that more closely align with consumer needs."

7.      The Mintel Report examined how margarine brands can "establish a healthier profile," "[H]ow preference for less processed foods is driving butter sales and what margarine/ spread brands are doing to compete," what attributes are important to consumers, and how margarine companies can incorporate alternative oils like olive oil to meet consumer demand.

8.      In response to these consumer preferences, Defendant introduced "Country Crock Plant Butter – Made With Olive Oil" that instead of having the 80% fat of margarine, has 79% fat.

9.      However, the differences between the ingredients in the Product and margarine are minimal.

10.     Defendant takes advantage of consumer demand for "plant-based" foods and high valued ingredients known to have health benefits, like olive oil.

11.     Consumers may erroneously expect that "plant based" means the Product contains only natural ingredients when this would be false, because the mix of vegetable oils are subject to chemical reactions in the presence of chemical catalysts.

12.    Defendant markets the Product to the increasing numbers of Americans seeking to consume more plant-based foods for reasons including their association with health benefits and their purported less significant environmental impact than non-plant-based foods.

13.    However, nutritionists concluded that substituting the Product for butter will yield no tangible impact.

14.    According to Professor Scott Rankin, chair of the food science department at the University of Wisconsin, Madison, margarine and the Product are indistinguishable, but for the presence of olive oil in the latter, and slight differences in fat and calories.

15.    Professor Rankin stated that the Product is twice as calorie-dense as its less trendy cousin, margarine, due to an increased concentration of saturated fat.

16.    Even though the Product claims to be "Made With Olive Oil," contains pictures of olives on olive branches, with green label statements and packaging, the Product contains a smaller than expected amount of olive oil.

**INGREDIENTS:** BLEND OF PLANT-BASED OILS (PALM FRUIT, PALM KERNEL, CANOLA AND OLIVE OIL), WATER, SALT, PEA PROTEIN, SUNFLOWER LECITHIN, CITRIC ACID, VITAMIN A PALMITATE, NATURAL FLAVOR, BETA CAROTENE (COLOR)

**INGREDIENTS:** BLEND OF PLANT-BASED OILS (PALM KERNEL, CANOLA, PALM FRUIT, AND OLIVE OIL), WATER, SALT, PEA PROTEIN, SUNFLOWER LECITHIN, CITRIC ACID, NATURAL FLAVOR, VITAMIN A PALMITATE, BETA CAROTENE (COLOR)

17.    The ingredient list shows that the Product contains more palm kernel oil, canola oil,

3

and palm fruit oil than olive oil.

18. That the Product's "blend of plant-based oils" contains olive oil in the smallest amount misleads consumers, who expect the statement, "Made With Olive Oil," to mean it contains a relatively significant and/or predominant amount of this valued ingredient.

19. Consumers seek olive oil for its nutritional benefits because it contains antioxidants, which promote immunity, and polyphenols, which combat oxidative stress.

20. Olive oil contains heart-healthy fats, has anti-inflammatory properties, and promotes brain function, bone strength, and balanced blood sugar.

21. In contrast, palm and canola oil do not possess these attributes and have detrimental fats.

22. The Product contains and makes other representations which are misleading.

23. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

24. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

25. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

26. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

27. The Product is sold for a price premium compared to other similar products, for no less than $3.39 per 10.5 OZ, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

28.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

30.     Plaintiff Duval Clemmons is a citizen of New York.

31.     Defendant Upfield US Inc., is a Delaware corporation with a principal place of business in Hackensack, Bergen County, New Jersey

32.     Defendant transacts business within this District through sale of the Product to residents of this District, by third-parties such as grocery stores, big box stores, drug stores, convenience stores, and online.

33.     Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

34.     Venue is in Manhattan in this District because a substantial part of the events or omissions giving rise to these claims occurred in Bronx County, i.e., Plaintiff's purchase and use of the Product and his awareness and/or experiences of and with the issues described here.

Parties

35.     Plaintiff Duval Clemmons is a citizen of Bronx, Bronx County, New York.

36.     Defendant Upfield US Inc. is a Delaware corporation with a principal place of business in Hackensack, New Jersey, Bergen County.

37.     Defendant is the largest "plant-based consumer product company in the world," because it is the largest manufacturer of margarines in the world, since 1871.

38.     Defendant promotes its "plant-based" products as natural and better for the

environment than dairy competitors, due to lower carbon emissions.

39.    According to Defendant, the reduced carbon emissions from plant-based diets are an independent mitigating factor for climate change.

40.    Defendant promotes plant-based diets as beneficial in promoting increased fiber intake and reducing risk of diet-related health issues like heart disease and diabetes.

41.    The Product is available to consumers in this District from third-party grocery stores, warehouse club stores, drug stores, convenience stores, big box stores, and online

42.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including BJ's Wholesale Club, 610 Exterior St Bronx NY 10451-2044 between July 2021 and December 2021, among other times.

43.    Plaintiff believed the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

44.    Plaintiff bought the Product because he expected it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits because that is what the representations said and implied.

45.    Plaintiff relied on the words and images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

46.    Plaintiff is one of the many Americans who value olive oil for its nutritive properties and who seeks to consume more plant-based foods.

47.    Plaintiff did not expect that a product would promise on the front label to be "MADE

WITH OLIVE OIL," with pictures of olives, in green coloring, yet would have less olive oil compared to other oil ingredients.

48.    Plaintiff trusted the Country Crock brand because it has been around for over fifty years.

49.    Plaintiff associated "plant-based" with "olive oil," because olive oil is known as a nutrient-rich food.

50.    Plaintiff was disappointed because he believed the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

51.    Plaintiff bought the Product at or exceeding the above-referenced price.

52.    Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

53.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

54.    The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

55.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

56.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar plant-based spreads, because he is unsure whether those representations are truthful.

<u>Class Allegations</u>

57.    Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of an:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and a

> **Consumer Fraud Multi-State Class**: All persons in the States of Michigan, Montana, Rhode Island, Georgia, North Dakota, Virginia, South Dakota, and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

58.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

59.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

60.    Plaintiff is adequate representative because his interests do not conflict with other members.

61.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

62.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

63.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

64.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

65.    Plaintiff incorporates by reference all preceding paragraphs.

66.   Plaintiff and class members desired to purchase a product that was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

67.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

68.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

69.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

70.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

71.   Plaintiff relied on the representations that the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

72.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

73.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

74.   Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this

deceptive conduct.

75.    As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

76.    In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<div align="center">Breach of Contract</div>

77.    Plaintiff entered into a contract with Defendant for purchase of the Product

78.    The terms of the contract provided that the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

79.    Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

80.    Plaintiff was damaged by the breach, and those damages include the purchase price.

<div align="center">Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em></div>

81.    The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

82.    Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

83.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

84.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

85.    Defendant's representations affirmed and promised that the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

86.    Defendant described the Product as one which was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

87.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

88.    This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

89.    Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

90.    Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

91.    Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

92.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

93.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

94.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

95.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

96.    Defendant had a duty to truthfully represent the Product, which it breached.

97.    This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

98.    Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated their extra-labeling promises and commitments to quality, transparency and putting its customers first.

99.    These promises were outside of the standard representations that other companies

may make in a standard arms-length, retail context.

100. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

101. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

102. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

103. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly palm and canola oils, which lacked these benefits.

104. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity of the representations.

105. Defendant knew of the issues described here yet did not address them.

106. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

107. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

13

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 14, 2022

<div align="right">

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

</div>

14