UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DUVAL CLEMMONS,
individually and on behalf of all others similarly
situated,

                         Plaintiff,

        -against-

UPFIELD US INC.,
                    Defendant.

-------------------------------------------------------------x

        22-cv-355 (PKC)

    <u>OPINION AND ORDER</u>

CASTEL, U.S.D.J.:

        Plaintiff Duval Clemmons brings a putative class action against defendant Upfield US Inc., alleging that the labeling on one of the company's "plant butter" products misrepresents that the plant butter is made predominantly with olive oil. Contrary to his expectations based on the product packaging, the product was composed mostly of palm and canola oils, and olive oil—while undeniably present—was only the smallest constituent in a four-oil blend.

        The Complaint asserts claims for violation of sections 349 and 350 of the New York General Business Law ("GBL"), as well as for violation of similar consumer protection statutes in other states. It additionally asserts claims for breach of contract, breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, violation of the Magnuson Moss Warranty Act, negligent misrepresentation, fraud, and unjust enrichment. (Dkt. 1, Compl.) Upfield has moved to dismiss under Rule 12(b)(6), Fed. R. Civ. P. (Dkt. 14) For the reasons discussed below, the motion to dismiss will be granted in part and denied in part.

I.    BACKGROUND

    A.    <u>Factual Background</u>

For purposes of a motion to dismiss, the Court accepts the Complaint's well-pleaded factual allegations as true, drawing all reasonable inferences in favor of the non-movant, Clemmons.  <u>In re Elevator Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir. 2007).

Upfield is the largest manufacturer of margarines and "plant-based" consumer products in the world.  (Compl. ¶ 37)  Relevant here, the company markets and sells a spread labeled "Country Crock Plant Butter Made With Olive Oil" ("the Product").[1]  (<u>Id.</u> ¶ 1)  The Product is marketed as "Dairy Free," and its packaging is green-themed with pictures of olives.  (<u>Id.</u>)  The Complaint includes the following image of the packaging:



(<u>Id.</u>)

---

[1] Upfield disputes that it actively sells a product labeled "Made With Olive Oil," and it claims that the current version of the Product only states "With Olive Oil."  It suggests that the version of the Product discussed in the Complaint was likely unavailable at the time Clemmons claims he purchased it.  (Def. Br. at 1 n.1)  The Court accepts the factual allegations of the Complaint as true.  Whether Clemmons, in fact, purchased the product described in the Complaint is a factual issue beyond the scope of the motion.

The Complaint asserts that the packaging is misleading because, despite the olive imagery and the highlighted statement "Made With Olive Oil," the Product is made mostly of palm and canola oil.  The Complaint alleges that the Product packaging includes following ingredient list:

> **INGREDIENTS**: BLEND OF PLANT-BASED OILS (PALM FRUIT, PALM KERNEL, CANOLA AND OLIVE OIL), WATER, SALT, PEA PROTEIN, SUNFLOWER LECITHIN, CITRIC ACID, VITAMIN A PALMITATE, NATURAL FLAVOR, BETA CAROTENE (COLOR)

(Id. ¶ 16)  The first ingredient is a "blend of plant-based oils," which consists of palm fruit oil, palm kernel oil, canola oil, and olive oil.[2]  (Id. ¶¶ 16, 17)  Olive oil is the smallest component oil in the blend.  (Id. ¶¶ 17, 18)

The Complaint states that olive oil is sought out by consumers as a healthy alternative to butter, other oils, and spreads.  (Id. ¶¶ 19–21)  Additionally, an increasing number of consumers seek out plant-based foods due to the perceived health benefits and lower environmental impact of such products.  (Id. ¶ 12)  Consumers may also understand "plant-based" products to have only natural ingredients.[3]  (Id. ¶ 11)

The Complaint alleges that the Product has been labeled to take advantage of these consumer trends and to mislead consumers seeking out the health benefits of olive oil into purchasing a product that is "indistinguishable" from margarine.  (Id. ¶¶ 8–10, 14)  In contrast to

---

[2] Upfield disputes the accuracy of the ingredient list reproduced in the Complaint.  It states that the list in the Complaint comes from the stick form of the Product rather that the tub variant shown in the image above.  It states that the ingredients in the tub variant are: "Blend of Plant-Based Oils (Soybean, Palm Kernel, Olive, Palm Fruit and Extra Virgin Olive Oil), Water, Salt, Faba Bean Protein, Soy Lecithin, Citric Acid, Natural Flavor, Vitamin E Acetate, Vitamin A Palmitate, Beta Carotene (Color)."  (Def. Br. at 6 n.2)  As noted, the Court accepts the truth of the allegations for the purpose of this motion.

[3] The Court notes that the term "plant-based" does not appear on the Product's front label but it is only used in the ingredient list.  To the extent Clemmons alleges he was misled specifically by this phrase, that allegation is not well-pleaded.

the above trends, consumers have moved away from margarine due to rising consumer awareness of potential negative health effects associated with trans fats and other margarine components.  (Id. ¶¶ 4–6)  The Product is alleged to have a fat content of 79%, which just narrowly avoids the 80% threshold that would require classification in the disfavored category of margarine.  (Id. ¶¶ 3, 8)  Other differences between the Product's ingredients and those of margarine are alleged to be minimal.  (Id. ¶ 9)

Clemmons alleges he purchased the Product on at least one occasion in Bronx County, New York between July 2021 and December 2021.  (Id. ¶ 42)  When deciding to purchase the Product, Clemmons observed the phrase "Made With Olive Oil" and the pictures of olives on the label; on this basis, he believed olive oil would be the main oil used in the Product. (Id. ¶¶ 43–47)  Clemmons states that had he known that olive oil was only a minor ingredient, he would not have made the purchase, or at minimum would have paid less.  (Id. ¶¶ 52–54).

B.   Procedural History

Clemmons filed his Complaint on January 14, 2022.  He seeks to represent a class of consumers in New York, as well as a Multi-State Class comprising consumers in Michigan, Montana, Rhode Island, Georgia, North Dakota, Virginia, South Dakota, and Oklahoma.  (Id. ¶ 57) The Complaint asserts claims for (1) violation of sections 349 and 350 of the GBL (and the consumer fraud statutes of the other states relevant to the proposed Multi-State Class), (2) breach of contract, (3) breach of express warranty, breach of the implied warranties of merchantability and fitness for a particular purpose, and violation of the Magnuson Moss Warranty Act, (4) negligent misrepresentation, (5) fraud, and (6) unjust enrichment.  The Complaint seeks both damages and injunctive relief.  (Id. ¶¶ 58, 64)

Upfield moved to dismiss the Complaint in its entirety (Dkt. 14) and filed an accompanying memorandum of law (Dkt. 15) ("Def. Br.").  Clemmons filed a response in which he withdrew his request for injunctive relief.  (Dkt. 16 at 7 n.1) ("Opp. Br.")  Upfield filed a reply.  (Dkt. 17) ("Reply")

## II.    LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(B)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  The Court is instructed to "construe the complaint liberally," to "accept[] all factual allegations in the complaint as true," and to "draw[] all reasonable inferences in the plaintiff's favor."  Palin v. New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019)  (brackets and internal quotation marks omitted).

"The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).  "A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."  Id.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (internal quotation marks omitted).

III.    DISCUSSION

A.    <u>Plaintiff's State Law Claims Are Not Preempted</u>

As an initial matter, Upfield argues that Clemmons's state law claims are

expressly preempted by the Food, Drug, and Cosmetic Act ("FDCA"), as amended by the

Nutrition Labeling and Education Act of 1990 ("NLEA").  <u>See</u> 21 U.S.C. §§ 343 <u>et seq.</u>

Specifically, Upfield characterizes Clemmons's argument as involving "an implied nutrient

content claim" and argues that suits about such claims are preempted by sections 343(r) and 343-

1(a)(5) of the FDCA.  The Court concludes that the Complaint does not allege that the label makes

an implied nutrient content claim, and federal law accordingly does not preempt the state law claims.

Section 343(r)(1) of the FDCA states that "[a] food shall be deemed to be

misbranded" (1) where a claim on the food's labeling either "expressly or by implication . . .

characterizes the level of any nutrient" required to be on the label and (2) where that claim does

not conform to certain federal regulatory requirements.  <u>Id.</u> § 343(r)(1)(A); <u>see</u> <u>Seljak v. Pervine</u>

<u>Foods, LLC</u>, 21 Civ. 9561 (NRB), 2023 WL 2354976, at *9 (S.D.N.Y. Mar. 3, 2023).  The

required label nutrients are set by regulation and the list includes such familiar items as

"saturated fat," "dietary fiber," and "protein."  21 C.F.R. § 101.9(c) (maintaining current list of

nutrients that either must or may be included on a nutrition label); <u>see</u> 21 U.S.C. § 343(q)(1),

(q)(2).

The Food and Drug Administration ("FDA") sets rules for how these nutrients

must be displayed in the Nutrition Facts panel on a food product, <u>see</u> <u>generally</u> 21 C.F.R. §

101.9, and it also regulates claims about these nutrients on other parts of the label, <u>see</u> <u>id.</u> §

101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type

required to be in nutrition labeling . . . may not be made on the label or in labeling of foods

unless the claim is made in accordance with this regulation. . . .").  These claims are divided into

two types.  "An expressed nutrient content claim is any direct statement about the level (or

range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'"  Id. §

101.13(b)(1).  An "implied nutrient content" claim is a statement that:

> (i) Describes the food or an ingredient therein in a manner that
> suggests that a nutrient is absent or present in a certain amount
> (e.g., "high in oat bran"); or
>
> (ii) Suggests that the food, because of its nutrient content, may be
> useful in maintaining healthy dietary practices and is made in
> association with an explicit claim or statement about a nutrient
> (e.g., "healthy, contains 3 grams (g) of fat").

Id. § 101.13(b)(2).  The regulations describe how implied nutrient claims may appear on product

labeling.  See id. § 101.65.  For example, the statement "contains oat bran" on a product label is

an implied nutrient content claim regarding the amount of dietary fiber in the product because

oat bran "is known to contain" fiber.  Id. § 101.65(c)(3).  The regulations clarify, however,

that—absent some added meaning gleaned from context—"[c]ertain label statements about the

nature of a product are not nutrient content claims" at all and are exempt from the relevant

regulatory requirements.  Id. § 101.65(b).  This includes "claim[s] about the presence of an

ingredient that is perceived to add value to the product, e.g., 'made with real butter,' 'made with

whole fruit,' or 'contains honey.'"  Id. § 101.65(b)(3).  A "valued ingredient" statement of this

sort is not a nutrient content claim, implied or otherwise.

> One of the changes made by the NLEA to the FDCA was the addition of an

express preemption provision.  In enacting this change, "Congress declared that the NLEA 'shall

not be construed to preempt any provision of State law, unless such provision is expressly

preempted under section 343–1(a) of the FDCA."  Korte v. Pinnacle Foods Grp., LLC., 17 Civ.

199 (SMY) (SCW), 2018 WL 1508855, at *2 (S.D. Ill. Mar. 27, 2018) (brackets omitted)

(quoting Section 6(c), Pub.L. No. 101–535, 104 Stat. 2353, 2364 (Nov. 8, 1990)).  Relevant here,

the preemption provision states:

> [N]o State . . . may directly or indirectly establish under any
> authority or continue in effect as to any food in interstate
> commerce--
>
> . . .
>
>> (5) any requirement respecting any claim of the type described
>> in section 343(r)(1) of this title made in the label or labeling of
>> food that is not identical to the requirement of section 343(r) of
>> this title . . . .

21 U.S.C. § 343-1(a)(5).  Accordingly, state laws respecting nutrient content claims—the type of

claim described in section 343(r)(1)—are preempted if they impose different labeling

requirements from those in the provisions discussed above.  But "claims based on statements not

falling into those categories are not preempted." Ackerman v. Coca-Cola Co., 09 Civ. 395 (JG),

2010 WL 2925955, at *7 (E.D.N.Y. July 21, 2010).

Assessed under this framework, the state law claims are not preempted.

Clemmons does not invoke FDA requirements in the Complaint, and he does not argue that

"Made With Olive Oil" is a nutrient claim.  Olive oil is not itself a label nutrient.  Cf. 21 C.F.R. §

101.9(c).  The Complaint does not allege that "Made With Olive Oil" implies the presence of a

certain amount of any label nutrient, nor has either party asserted that it does so.  See Korte,

2018 WL 1508855, at *2 ("[A] review of [sections 101.9 and 101.13] fails to reveal what

nutrient, express or implied, would be implicated in labeling a product 'extra virgin olive oil.'").

The Complaint instead alleges that olive oil is a "high value[] ingredient[]" sought out by

Clemmons.  (Compl. ¶ 10)  The label statement "Made With Olive Oil" therefore falls into the

category of "valued ingredient" claims—like "made with real butter"—which are not nutrient content claims.  21 C.F.R. § 101.65(b)(3).  Because none of the claims are dependent on nutrient content, as defined and described in the FDA regulations, none are preempted by section 343(r).

Upfield's arguments to the contrary are unpersuasive.  Upfield initially asserts that "Plaintiff's claim that 'Made with Olive Oil' falsely implies a certain amount of olive oil in the Product as a nutrient is expressly preempted" by FDA regulations.  (Def. Br. at 4)  As discussed above, the Complaint makes no such claim.  Upfield later clarifies that it means that the claims are preempted specifically because section 101.65 excludes valued ingredient statements from the definition of "implied nutrient content claim."  Upfield argues that because the FDA says "Made With Olive Oil" is not a implied nutrient content claim, therefore "according to FDA regulations" that statement cannot imply anything about the quantity of olive oil in the Product.  (Def. Br. at 16; see Reply at 5–6)  But the regulations in question address statements about the set of nutrients a consumer sees in the Nutrition Facts panel, not any statements about any ingredients whatsoever.  Upfield's argument turns the preemption provision on its head.  Section 343-1(a)(5) "preempts only claims based on statements that expressly or by implication characterize the level of a nutrient."  Ackerman, 2010 WL 2925955, at *7.

The Court concludes the state law claims are not preempted.

B.     The Complaint Plausibly Alleges a Deceptive Act Under the GBL

The Complaint adequately pleads a violation of sections 349 and 350 of the GBL because a reasonable consumer could read the statement "Made With Olive Oil" as a statement concerning the predominant oil ingredient in the plant butter spread.[4]

Section 349 prohibits deceptive acts and practices "that are likely to mislead a reasonable consumer acting reasonably under the circumstances" and provides a cause of action for persons injured by such an act.  Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020) (internal quotation marks omitted); see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26 (1995).  To state a claim under section 349 "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Chen, 954 F.3d at 500 (internal quotation marks omitted).  Section 350 declares false advertising similarly unlawful, and "is analyzed under the same 'reasonable consumer' standard as Section 349."  Id. "[I]t is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead."  Oswego, 85 N.Y.2d at 26.

Under either provision, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013).  But such a determination should be rare.  See Cooper v. Anheuser-Busch, LLC, 553 F. Supp. 3d 83, 95 (S.D.N.Y. 2021); Budhani v. Monster Energy Co., 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021) (explaining that a court "must

---

[4] Clemmons also seeks to represent a multi-state class comprising consumers from eight additional states who allege violations under their own state consumer protection laws.  As the Complaint alleges specific facts only as to Clemmons and New York, the Opinion addresses his individual claim only.

proceed with care in" determining whether a reasonable consumer would be misled as a matter of law because "the inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage") (internal quotation marks omitted)).

Ultimately, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." Fink, 714 F.3d at 742. Courts are to "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." Wargo v. Hillshire Brands Co., 599 F.Supp.3d 164, 172 (S.D.N.Y. 2022) (internal quotation marks omitted). But where the front packaging of a product contains a misleading representation, "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct" the misrepresentation. Mantikas v. Kellogg Co., 910 F.3d 633, 637 (2d Cir. 2018).

Upfield does not dispute that the Complaint has adequately alleged that the Product is consumer-oriented or that it alleges Clemmons suffered injury. It moves to dismiss solely on the ground that Clemmons has failed to plausibly allege a materially misleading deceptive act or practice. The central question here is whether the labeling of the Product as plant butter "made with" olive oil would lead a reasonable consumer to believe that olive oil was the primary—or predominant—oil used to make the Product. In this Circuit, Mantikas governs "predominant" ingredient claims.[5]

---

[5] The Complaint repeatedly characterizes Clemmons as expecting "a significant and/or predominant" level of olive oil. See, e.g., Compl. ¶¶ 18, 43. In his briefing to the Court, he grounds the theory behind his Complaint in Mantikas, a case which concerns "predominance" claims. (Opp. Br. at 9–10). The Court accordingly understands the phrase "significant and/or predominant" to simply mean Clemmons believed that olive oil would be the primary or predominant oil in the Product. To the extent the Complaint asserts a separate claim on the theory that olive oil is not a "significant" ingredient, meaning something nebulously "less than" a predominant ingredient, that claim would be dismissed. The Product indisputably contains olive oil, and Clemmons has identified no legal standard by which the Court would determine what constitutes a significant amount.

Mantikas concerned Cheez-It brand crackers labeled as "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN."  The plaintiff understood this statement to mean that the grain content of the crackers was predominantly whole grain; but while "whole wheat flour" was in the ingredient list, the primary ingredient was "enriched white flour."  Id. at 634–35.  The Second Circuit allowed the claim to proceed because it found it plausible that the "large, bold-faced claims of 'WHOLE GRAIN'" would communicate to a reasonable consumer that whole grain was the predominant grain in the crackers.  Id. at 637.  The misrepresentation was not cured by additional language on the front of the box giving "the precise number of grams of whole grain per serving."  Id. at 636–37.  In context, this disclosure was consistent with the misleading representation that the grain used was primarily whole grain.  Id. at 637.  And while the ingredient list disclosed that whole grain was not the predominant grain, as noted above, "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."  Id.

The holding in Mantikas did not reach all ingredient-labeling claims.  The opinion distinguished a subset of claims involving "an ingredient that obviously was not the products' primary ingredient."  Id. at  638.  For example, crackers labeled as "made with real vegetables" would not mislead a consumer into thinking vegetables were the predominant ingredient because consumers "would be 'familiar with the fact of life that a cracker is not composed of primarily fresh vegetables.'"  Id. (quoting Red v. Kraft Foods, Inc., 10 Civ. 1028, 2012 WL 5504011, at *2 (C.D. Cal. Oct. 25, 2012)).  A claim that a "made with" label misrepresented that an ingredient was the "predominant" one may accordingly be dismissed where it is obvious that could not be the predominant ingredient in the relevant product.

The direct comparison with <u>Mantikas</u> is instructive here.  <u>Mantikas</u> summarized its reasoning as follows:

> In our case of Cheez-Its crackers . . . reasonable consumers are likely to understand that crackers are typically made predominantly of grain. They look to the bold assertions on the packaging to discern what <u>type</u> of grain. The representation that a cracker is "made with whole grain" would thus plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominately, whole grain.

<u>Id.</u>  Similar reasoning applies here.  While reasonable consumers may not have a well-defined understanding of what "plant butter" is, they are likely to understand that a "plant butter" spread is made from plant-based ingredients.[6]  As in <u>Mantikas</u>, they will likely look to emphasized assertions on the packaging to discern what these ingredients are.  It is therefore plausible that the representation that the plant butter is "Made With Olive Oil" could lead a reasonable consumer to conclude that the major plant-based ingredient was olive oil.  In this context, the disclosure on the front of the packaging that the Product is a "79% vegetable oil spread" would not necessarily contradict the initial impression: As Upfield insists, olive oil is a constituent part of oil blend used in the Product and therefore some unknown portion of that number.[7]

---

[6] The Court does not take it as a given that the reasonable consumer does, in fact, have a clear understanding of what "plant butter" is.  The term is novel enough that it does not appear in any dictionary consulted by the Court.

[7] The Court notes that if Upfield attempted to sell the oil blend used in the Product on its own, it could not use the same "Made With Olive Oil" label statement without also stating the precise amount of olive oil in the blend:

> The common or usual name of a mixture of edible fats and oils containing less than 100 percent and more than 0 percent olive oil shall be as follows:
>
> . . .
>
> > (b) When the label bears any representation, other than in the ingredient listing, of the presence of olive oil in the mixture, the descriptive name shall be followed by a statement of the percentage of olive oil contained in the product in the manner set forth in § 102.5(b)(2).

21 C.F.R. § 102.37 ("Mixtures of edible fat or oil and olive oil.").  The rationale behind this language was that "olive oil in such mixtures is a characterizing ingredient which has a material bearing on price and consumer acceptance of such mixtures."  39 Fed. Reg. 20890 (June 14, 1974).

In contrast to the cases distinguished in <u>Mantikas</u>, the Court cannot conclude that it would be "obvious" to a reasonable consumer that olive oil is not the predominant ingredient in "plant butter."  Whether and to what extent consumers know that canola and palms oils are the sources of the texture and base flavor in "plant butter"—as suggested by Upfield—is a question of fact not suitable for disposition on a motion to dismiss.  And to the extent Upfield asserts that it is impossible to make "plant butter" where olive oil is the predominant oil, a reasonable consumer is not expected to have an intimate understanding of the chemical properties of olive oil vis-à-vis the other vegetable oils or a sense of what ratio of oils is feasible.  <u>Accord</u> <u>Strow v. B&G Foods, Inc.</u>, 21 Civ. 5104, 2022 WL 4608948, at *7 (N.D. Ill. Sept. 30, 2022) ("Reasonable consumers are not chemists. The law does not expect consumers to be well-versed in butter's thermodynamic properties."); <u>Brady v. Bayer Corp.</u>, 26 Cal. App. 5th 1156, 1173 (Cal. Ct. App. 2018) ("A reasonable consumer might very well think it possible, in the early 21st Century, to package a full day's supply of vitamins in one gummie. Certainly this court—made up of reasonable consumers—has no sense of whether that is or is not possible.").

Upfield unsuccessfully attempts to distinguish this case from <u>Mantikas</u>.  Its primary argument is that—unlike the "whole grain" ingredient representations in <u>Mantikas</u>—the statement "Made With Olive Oil" can only be understood as making a flavoring claim: Consumers will understand that olive oil is intended as a "flavor note" to the butter-imitating flavors of the other oils in the spread.  This is not a particularly compelling argument, much less a conclusion the Court can reach as a matter of law.  Olive oil is a known alternative to butter, and the Product is a butter alternative where the primary ingredients are plant-based oils like olive oil.  The inference that "Made With Olive Oil" is an ingredient statement is a straightforward allegation that meets the plausibility standard.

Additionally, "where the relevant term is both an ingredient and a flavor," courts have routinely read the words "made with" to "designate[] a product as an ingredient." Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp. 3d 370, 383 n.4 (S.D.N.Y. 2021); see Russett v. Kellogg Sales Co., 21 Civ. 8572 (NSR), 2022 WL 2789837, at *4 (S.D.N.Y. July 15, 2022) (referring to "made with" as "an ingredient indicator"); Brown v. Kellogg Sales Co., 20 Civ. 7283 (ALC), 2022 WL 992627, at *4 (S.D.N.Y. Mar. 31, 2022) ("Courts typically find misleading representations about ingredients when the product label explicitly asserts that it is made with a specific ingredient . . . when the ingredient is not predominant in the Product. The front labels in most of these cases prominently make assertions such as 'Made with [Ingredient]' . . . on the front packaging."); Kennedy v. Mondelez Glob. LLC, 19 Civ. 302 (ENV) (SJB), 2020 WL 4006197, at *10 (E.D.N.Y. July 10, 2020) (outcome of dismissal "would be different if the products were labeled as 'Crackers Made with Graham Flour.'"); Mitchell v. Whole Foods Market Group, Inc., 20 Civ. 8496 (ER), 2022 WL 657044, at *5 (S.D.N.Y. Mar. 4, 2022) (distinguishing from Mantikas on the ground that "the representations here do not include any modifiers such as 'made with'").  The Complaint plausibly alleges that the front of the Product's packaging uses the phrase "Made With Olive Oil," thereby implying that olive oil is an ingredient and at least a predominant one.

The parties will be able to develop a factual record concerning a reasonable consumer's understanding of the meaning of the Product's label.  It suffices that Clemmons's claimed understanding is not unreasonable as a matter of law.  And "at the motion-to-dismiss stage, where a representation is capable of two possible reasonable interpretations, the Court is not free to reject the misleading one simply because there is an alternative, non-misleading

interpretation." <u>Cooper</u>, 553 F. Supp. 3d at 97 (brackets, ellipsis, and internal quotation marks omitted).

      C.    <u>The Complaint Does Not State a Claim for Breach of Contract</u>

      To recover on a breach of contract claim under New York law against a particular defendant, a plaintiff must establish: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." <u>Diesel Props S.r.l. v. Greystone Bus. Credit II LLC</u>, 631 F.3d 42, 52 (2d Cir. 2011). To properly state a claim, "[t]he plaintiff must identify the essential terms of the contract, including a specific provision of the contract that was breached." <u>Trustpilot Damages LLC v. Trustpilot, Inc.</u>, 21 Civ. 432 (JSR), 2021 WL 2667029, at *8 (S.D.N.Y. June 29, 2021) (citing <u>NFA Grp. v. Lotus Research, Inc.</u>, 180 A.D.3d 1060, 1061 (2d Dep't 2020)). "[T]he general rule [is] that privity between a plaintiff and a defendant is required to support a breach of contract claim." <u>Tutor Perini Bldg. Corp. v. Port Auth. of New York & New Jersey</u>, 191 A.D.3d 569, 570 (1st Dep't 2021). "[S]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." <u>Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.</u>, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (brackets and internal quotation marks omitted).

      Clemmons has failed to adequately plead a breach of a contract claim. The Complaint alleges that Clemmons and the other members of the proposed class purchased the Product from grocery stores and similar third-party retailers. (Compl. ¶ 41) There are no facts alleged showing that Clemmons and Upfield were in privity. The allegation that (a) there was a contract with Upfield and (b) the terms of that contract were identical to Clemmons's belief that

olive oil would be the predominant oil is wholly conclusory and thus insufficient to survive a motion to dismiss. (Compl. ¶¶ 77–78)

The breach of contract claim will be dismissed.

D.    The Complaint Does Not State a Claim for Breach of Warranty

1.    Express Warranty

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2-313(1)(a). "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (collecting cases). But "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a); see Wargo, 599 F. Supp. 3d at 176 ("[T]o assert a breach of express warranty claim under New York law, a buyer must provide the seller with timely notice of the alleged breach of warranty." (internal quotation marks omitted)). At minimum, the allegations of fact must "include the date and method by which Plaintiff afforded such notice to Defendant." Petrosino v. Stearn's Prod., Inc., 16 Civ. 7735 (NSR), 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) (deeming "conclusory statements" insufficient to provide notice of breach of express warranty).

The Complaint alleges that "Plaintiff provided or will provide notice to Defendant." (Compl. ¶ 89) This conclusory assertion that notice may or may not have been given at an unspecified time in an unspecified manner is "wholly equivocal" and "insufficient" to

adequately plead notice.  Campbell, 516 F. Supp. 3d at 391; see also Wargo, 599 F. Supp. 3d at 177.

Clemmons alternately asserts that he has served notice through the Complaint itself.  (Compl. ¶ 90)  "Whether the required notice for a breach of warranty claim must be made pre-lawsuit or can be accomplished by commencing litigation is an open question, and courts in this District have split in answering it."  Wheeler v. Topps Co., Inc., 22 Civ. 2264 (LGS), 2023 WL 405015, at *4 (S.D.N.Y. Jan. 25, 2023); see Leonard v. Mondelez Glob. LLC, 21 Civ. 10102 (PAC), 2023 WL 2403259, at *5 (S.D.N.Y. Mar. 8, 2023) (same).  The courts of New York have said little on this point, and the split has arisen over divergent readings of a single case:

> This argument [i.e., one urging dismissal for lack of timely notice,] overlooks the fact that the complaint and subsequent amended complaint in this action themselves constituted such notice, and that the plaintiff had repeatedly made its objections to Kopo's pattern of deficient performance known prior to the shipments reflected in the invoices. Under these circumstances, it is at the very least an issue of fact as to whether reasonably timely notice of breach was given.

Panda Cap. Corp. v. Kopo Int'l, Inc., 242 A.D.2d 690, 692 (2d Dep't 1997).  Courts allowing for notice by complaint have focused on the portion of this passage stating that "the complaint and subsequent amended complaint . . . themselves constituted such notice."  See, e.g., Bayne v. Target Corp., 21 Civ. 5938 (MKV), 2022 WL 4467455, at *3 (S.D.N.Y. Sept. 23, 2022) (referring to this passage as "unequivocally" stating the premise); see id. at *3 n.5 (collecting and comparing cases for both propositions).

On the other hand, "the clear majority of courts in this District" have rejected this reading.  Wheeler, 2023 WL 405015, at *4 (compiling cases); see Barton v. Pret A Manger (USA) Ltd., 535 F. Supp. 3d 225, 246 (S.D.N.Y. 2021) (compiling cases for the proposition that

"[t]he weight of authority in this Circuit does not view a complaint to be by itself sufficient reasonable notice"). The statement in <u>Panda Capital</u> was made in the "specific context . . . where 'the plaintiff had repeatedly made its objections known,'" and it was "those repeated objections and the filing of the suit together [that] created 'at the very least an issue of fact as to whether reasonably timely notice of breach was given.'" <u>Wheeler</u>, 2023 WL 405015, at *4 (ellipsis omitted) (quoting <u>Panda Capital</u>, 242 A.D.2d at 692); <u>see</u> <u>Lugones v. Pete & Gerry's Organic, LLC</u>, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) ("The Court does not believe that such an equivocal statement amounts to a binding rule that Plaintiffs' filed complaint . . . satisfies N.Y. U.C.C. § 2-607(3)(a)."); <u>Barton</u>, 535 F. Supp. 3d at 246 ("<u>Panda Capital</u> is the only New York State decision that suggests that the filing of a complaint by itself may be sufficient to satisfy the notice requirement, and, as <u>Lugones</u> points out, the statement in <u>Panda Capital</u> is equivocal.")

Giving due deference to <u>Panda Capital</u> but noting that the plaintiff there had assertedly made its objections known pre-suit, the Court agrees with the majority of district courts that have addressed this issue. A plaintiff must give "pre-litigation notice" because "timely notice is a condition <u>precedent</u> to bringing an action for breach of warranty." <u>Lugones</u>, 440 F. Supp. 3d at 244–45 (internal quotation marks omitted). Section 2-607(3)(a) requires the buyer provide notice of the breach or "be barred from any remedy," but "[t]his language does not make sense if the act of pursuing a remedy would inherently provide notice to a merchant." <u>Wheeler</u>, 2023 WL 405015, at *5 (internal quotation marks omitted). Because Clemmons does not allege that he provided notice in a timely manner, his express warranty claim fails and will be dismissed.

2.      Implied Warranties

Clemmons alleges breaches of two implied warranties: (1) the implied warranty of merchantability, see N.Y. U.C.C.  § 2-314, and (2) the implied warranty of fitness for a particular purpose, see id. § 2-315.  Under New York law, however, "no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." Anderson v. Unilever United States, Inc., 607 F. Supp. 3d 441, 458–59 (S.D.N.Y. 2022) (internal quotation marks omitted) (citing Aracena v. BMW of N. Am., LLC, 159 A.D.3d 664, 666 (2d Dep't 2018)).  This rule has been applied regarding both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.  See, e.g., Lexow & Jenkins, P.C. v. Hertz Com. Leasing Corp., 122 A.D.2d 25, 26 (2d Dep't 1986) (affirming dismissal of claims for breach of implied warranties of fitness and merchantability where there was no privity and only economic was loss alleged).  As discussed above, the Complaint does not plausibly allege that the parties are in privity, and Clemmons has not alleged a personal injury; the only damages he seeks relate to the purchase price of the Product.  (Compl. ¶ 95)

The breach of implied warranty claims will likewise be dismissed.

3.      Magnuson Moss Warranty Act

Clemmons's claim under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ("MMWA"), will also be dismissed.  The MMWA provides for a private right of action if a consumer is damaged based on a supplier's failure to comply with its obligations under a written or implied warranty.  15 U.S.C. § 2310(d)(1).  Because the Complaint fails to plausibly allege a breach of warranty, it fails to state a MMWA claim as well.  See Cosgrove v. Oregon Chai, Inc., 520 F. Supp. 3d 562, 587 (S.D.N.Y. 2021) ("[T]he absence of a qualifying warranty

necessitates dismissal of the MMWA claim."); Garcia v. Chrysler Grp. LLC, 127 F. Supp. 3d

212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead

a cause of action for breach of written or implied warranty under state law.").

     E.     The Complaint Does Not State a Claim for Negligent Misrepresentation

     To state a claim for negligent misrepresentation under New York law, a plaintiff

must allege, "(1) the existence of a special or privity-like relationship imposing a duty on the

defendant to impart correct information to the plaintiff; (2) that the information was incorrect;

and (3) reasonable reliance on the information." Mandarin Trading Ltd. v. Wildenstein, 16

N.Y.3d 173, 180 (2011) (quotation marks omitted). To plead a special relationship, a plaintiff

must adequately allege that he or she was a "known party or parties." Sykes v. RFD Third Ave.

1 Assoc., LLC, 15 N.Y.3d 370, 373 (2010). Merely being part of "a class" of possible recipients

of a statement will not suffice. Westpac Banking Corp. v. Deschamps, 66 N.Y.2d 16, 19 (1985).

"[L]iability for negligent misrepresentation has been imposed only on those persons who possess

unique or specialized expertise, or who are in a special position of confidence and trust with the

injured party such that reliance on the negligent misrepresentation is justified." Kimmell v.

Schaefer, 89 N.Y.2d 257, 263 (1996). This typically means a professional-client relationship,

such as that of a lawyer, accountant, or engineer. Id. at 263–64.

     The Complaint does not plausibly allege any privity-type or special relationship

of this sort. It instead alleges that Upfield had a "duty to truthfully represent" the Product on

account of the company's "special knowledge and experience" and market position as a "trusted

company, known for its transparent labeling." (Compl. ¶¶ 96–97) The only described contact

between the parties is that Clemmons, like many other consumers, viewed and purchased

Upfield's product. This indirect, attenuated relationship is insufficient to impose a duty upon

Upfield.  <u>See</u>, <u>e.g.</u>, <u>Wargo</u>, 599 F. Supp. 3d at 176 (dismissing negligent misrepresentation claim where allegations "only describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller"); <u>Izquierdo v. Mondelez Int'l, Inc.</u>, 16 Civ. 4697 (CM), 2016 WL 6459832, at *9 (S.D.N.Y. Oct. 26, 2016) ("[A] basic commercial transaction does not give rise to a special relationship.").

 The negligent misrepresentation claim will be dismissed.

 F. <u>The Complaint Does Not State a Claim for Fraud</u>

 "'The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.'"  <u>Epiphany Cmty. Nursery Sch. v. Levey</u>, 171 A.D.3d 1, 8 (1st Dep't 2019) (quoting <u>Eurycleia Partners, LP v. Seward & Kissel, LLP</u>, 12 N.Y.3d 553, 559 (2009)).  A plaintiff must also allege that the defendant intended to commit fraud, and "proof of intent is to be determined from surrounding circumstances."  <u>ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.</u>, 131 A.D.3d 427, 428–29 (1st Dep't 2015).

 Rule 9(b), Fed. R. Civ. P., requires that "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[;] plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."  <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir. 2006) (brackets, ellipsis, and internal quotation marks omitted).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial

evidence of conscious misbehavior or recklessness." Id. at 290–91 (internal quotation marks omitted).

The Complaint's allegations of fraudulent intent do not meet this standard, stating only that Upfield's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Compl. ¶ 106)  Merely alleging that a "statement is false is not sufficient to establish fraudulent intent." Wargo, 599 F. Supp. 3d at 178 (internal quotation marks omitted).  Further, it is undisputed that the packaging itself discloses in the ingredients list the component parts of the oil blend used, which is not consistent with fraudulent intent.  See Campbell, 516 F. Supp. 3d at 391 (concluding that identification in the ingredients list "is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud" even where it would "not stymie a deceptive labeling claim").  The Complaint's vague allegations of fraudulent intent are insufficient.

The fraud claim will therefore be dismissed.

G.    The Complaint Does Not State a Claim for Unjust Enrichment

Under New York law, "[t]he elements of a cause of action to recover for unjust enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." GFRE, Inc. v. U.S. Bank, N.A., 130 A.D.3d 569, 570 (2d Dep't 2015) (citations and internal quotation marks omitted).  The central inquiry is whether "the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012).  Unjust enrichment is not intended to be "a catchall cause of action to be used when others fail." Id.  It is "not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id. at 790–91.

-23-

Here, the basis of Clemmons's unjust enrichment claim is that "the Product was not as represented and expected." (Compl. ¶ 107) Accordingly, this claim cannot succeed "because it merely duplicates [his] other claims based on the same alleged misrepresentations." Davis v. Hain Celestial Grp., Inc, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (citing Corsello, 18 N.Y.3d at 790). The Complaint also does not plausibly allege how or why equitable considerations would weigh against Upfield.

IV.   CONCLUSION

In accordance with the above, the Court GRANTS in part and DENIES in part the Motion to Dismiss. (Dkt. 14) The motion is GRANTED with respect to the claims for (1) breach of contract, (2) breach of express warranty, breach of the implied warranty of merchantability/fitness for a particular purpose, and violation of the Magnuson Moss Warranty Act, (3) negligent misrepresentation, (4) fraud, and (5) unjust enrichment. These claims are dismissed with prejudice. The motion is DENIED with respect to the consumer protection claims under sections 349 and 350 of the GBL.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        March 31, 2023