UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DUVAL CLEMMONS,
individually and on behalf of all others similarly
situated,

                            Plaintiff,

      -against-

FLORA FOOD US INC. f/k/a UPFIELD US
INC.,

                            Defendant.
-----------------------------------------------------------x

22-cv-355 (PKC)

OPINION AND ORDER

CASTEL, U.S.D.J.:

        Plaintiff Duval Clemmons brings a putative class action against defendant Flora Food US Inc., f/k/a Upfield US Inc.[1] Defendant Flora manufacturers and sells, among other products, a "plant butter product," which is a vegetable oil spread sold under its Country Crock brand. Plaintiff is an individual who purchased Flora's plant butter product on multiple occasions. Plaintiff alleges that Flora fraudulently mispresents that the "plant butter" product is made predominantly with olive oil.

        The Court granted in part Flora's motion to dismiss various claims in the Complaint but denied the motion as to Clemmons' claims under sections 349 and 350 of New York General Business Law ("GBL"). (ECF 19.) With the discovery period now closed, Flora moves for summary judgment on the remaining claims. (ECF 45.)

        The motion for summary judgment turns principally on whether Clemmons has come forward with evidence sufficient for a reasonable jury to conclude that he purchased a

---

[1] Defendant notified the Court of a name change to Flora Food US Inc., as of October 14, 2025. (ECF 55; ECF 55-1.) The Clerk is respectfully requested to amend the caption in accordance with the caption in the Opinion and Order.

1

Flora plant butter product labeled "Made With Olive Oil." Flora contends that this is not possible because it had changed the packaging to "With Olive Oil" around eighteen months before Clemmons claimed to have purchased the product. Why would the distinction between packaging with the words "Made With" versus "With" be of outcome determinative importance, as Flora contends? Among other reasons, in opposition to the current motion, Clemmons has endeavored to prove the falsity of the "Made With" language by using a consumer perception survey in which his expert used "With Olive Oil" as the comparator, describing the latter in her deposition as a "reasonable label that would not be making the potentially problematic claim." (ECF 46-13, Matthews Tr. 28:4-25, 29:1-3.)

The Court ultimately concludes that no reasonable jury could conclude that Clemmons purchased a plant butter between April 2021 and October 2021, the period in which he asserts he made his purchases, that had been labelled by Flora as "Made With Olive Oil." For this and other reasons, the Court will grant summary judgment in favor of Flora.

BACKGROUND

The Court assumes familiarity allegations of the Complaint as discussed in the Court's previous decision. See generally Clemmons v. Upfield US Inc., 667 F. Supp. 3d 5 (S.D.N.Y. 2023). The following facts are either undisputed or described in the light most favorable to Clemmons as the non-moving party. See Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

In 2019, Flora first launched the sale of tubs of Country Crock Plant Butter in the United States market ("the Product"). (Pl. 56.1 (ECF 49) ¶ 1; Def. 56.1 (ECF 51) ¶ 1.)[2] The

---

[2] Citations to the parties' Rule 56.1 statements are intended to reflect the evidence cited in those statements. Citations to exhibits in the summary judgment record is not intended to imply that the Court has relied exclusively on that portion of the record.

Product was marketed as a dairy-free and vegan spread that contains a combination of plant-based oils blended together. (Id.) The initial version of the Product's lid and front label featured the claims "Made with Olive Oil" and "79% vegetable oil spread" ("the 2019 Packaging"). (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 5.) The 2019 Packaging of the Product is pictured below:



(ECF 1, Compl't ¶ 1.)

In October of 2019, Flora ceased production of the 2019 Packaging, labeled as "Made With Olive Oil," and switched the Product to packaging labeled with the phrases, "With Olive Oil" and "79% plant-based oil spread." (Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8.) In 2020, Flora began selling the Product packaged with the "With Olive Oil" label to retailers, distributors, and wholesalers (the "2020 Packaging"). (Pl. 56.1 ¶ 9; Def. 56.1 ¶ 9.) The 2020 Packaging is pictured below:



ECF 46-2.

In March of 2020, Flora began selling a twin pack version of the Product to warehouse stores (the "Twin Pack"). (Pl. 56.1 ¶ 16; Def. 56.1 ¶ 16.) The Twin Pack contains two 10.5-ounce tubs of the Product. (Pl. 56.1 ¶ 12; Def. 56.1 ¶ 12.) The Twin Pack has an outer sleeve around the two tubs of the Product, which were labeled with the 2020 Packaging phrases "With Olive Oil" and "79% plant-based oil spread." (Pl. 56.1 ¶ 11; Def. 56.1 ¶ 11.) The lids and front labels of the Product contained in the Twin Pack include the same phrases. (Pl. 56.1 ¶ 12; Def. 56.1 ¶ 12.)

On the outer sleeve of the Twin Pack, the ingredients are listed in descending order of predominance by weight as required by federal regulations. (Pl. 56.1 ¶ 38; Def. 56.1 ¶ 38.) It lists in small type as the first ingredient "BLEND OF PLANT-BASED OILS (SOYBEAN, PALM KERNEL, OLIVE, PALM FRUIT AND EXTRA VIRGIN OLIVE OIL)". (ECF 46-3.) The inner tubs of the Product contained the same primary ingredient disclosure. (Pl. 56.1 ¶ 40; Def. 56.1 ¶ 40; ECF 46-2.)

4

On April 12, 2021, Clemmons purchased a Twin Pack of the Product for $3.69 from the BJ's Wholesale Club, located at 610 Exterior Street, Bronx, New York and part of a national retail chain selling food and other items ("BJ's"). (Pl. 56.1 ¶¶ 29, 33; Def. 56.1 ¶¶ 29, 33.) Clemmons purchased a Twin Pack of the Product from BJ's on three other occasions: on May 3, 2021, for $3.69, July 14, 2021, for $2.69, and October 13, 2021, for $3.69. (Pl. 56.1 ¶¶ 33-36; Def. 56.1 ¶¶ 33-36.) Clemmons never purchased the Product online or from other stores besides BJ's. (Pl. 56.1 ¶ 30; Def. 56.1 ¶ 30.)

Clemmons testified that he considers himself to be someone who seeks plant-based alternatives in part because he believes they are healthier. (Pl. 56.1 ¶¶ 73, 75; Def. 56.1 ¶¶ 73, 75.) He seeks to purchase foods that will not negatively impact his cholesterol and he purchased the Product to avoid cholesterol. (Pl. 56.1 ¶¶ 77-78; Def. 56.1 ¶¶ 77-78.) Clemmons used the product around twice per week as a substitute for butter or margarine while cooking. (Pl. 56.1 ¶¶ 43-44; Def. 56.1 ¶¶ 43-44.) He enjoyed the Product's taste and that he was satisfied with the Product's performance for spreading, baking, and cooking. (Pl. 56.1 ¶¶ 84-85; Def. 56.1 ¶¶ 84-85.)

Clemmons asserts that he was misled by labeling that states that the Product was "Made With Olive Oil" and believed that the Product consisted solely of olive oil and nothing else. (Pl. 56.1 ¶ 45; Def. 56.1 ¶ 45.) Clemmons acknowledged in his deposition that he had never seen a 100% olive oil product that is solid at room temperature, and he knew the Product is solid at room temperature. (Pl. 56.1 ¶ 47; Def. 56.1 ¶ 47.) In support of his allegations, Clemmons produced the opinion of, Andrea Lynn Matthews, Ph.D., an assistant professor of marketing at Wichita State University, whose opinion is described below. (Pl. 56.1 ¶¶ 54-55; Def. 56.1 ¶¶ 54-55.)

SUMMARY JUDGMENT STANDARD

Under Rule 56(a), Fed. R. Civ. P., summary judgment should be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment, the nonmoving party must set forth specific facts that show there is a genuine issue of material fact to be tried. Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996). The moving party is entitled to judgment as a matter of law when, after adequate time for discovery, the nonmoving party fails to make a sufficient showing on an essential element of their claim, to which it has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the court is "required to view the evidence in the light most favorable to the party opposing summary judgment" and to draw all reasonable inferences in favor of the nonmoving party. Hayes v. Dahlke, 976 F.3d 259, 267 (2d Cir. 1996). In ruling on the motion, the district court "may rely on 'any material that would be admissible or usable at trial.'" Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1997). To overcome a motion for summary judgment, "a party may not rely on mere speculation or conjecture" and "mere conclusory allegations or denials cannot themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

DISCUSSION

Flora asserts that it is entitled to summary judgment in its favor on Clemmons' remaining claims brought under New York General Business Law sections 349 and 350. Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or

commerce or in the furnishing of any service." N.Y. Gen. Bus. L. § 349(a). Section 350 prohibits "false advertising in the conduct of any business, trade or commerce in the furnishing of any service." Id. § 350. Both statutes are aimed at deceptive conduct and the standard for recovery is identical under the statutes. Colpitts v. Growers, 20 Civ. 2487 (JPC), 2023 WL 2752161, at *4 (S.D.N.Y. Mar. 31, 2023). To successfully assert a claim under either section, the plaintiff must prove "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, 802 F.3d 289, 300 (2d Cir. 2015) (citing Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 944 (2012)). Flora asserts that Clemmons could not have relied on the "Made With Olive Oil" labeling because Flora ceased using the "Made With Olive Oil" language around 18 months before Clemmons claimed to buy the Product and, indeed, never sold the Twin Pack—the type of Product Clemmons purchased—with such labeling. Based upon its review of the summary judgment record, the Court concludes that no reasonable jury could find in Clemmons' favor.

    A. No Reasonable Jury Could Conclude That Clemmons Purchased a Product Labeled With the Phrase "Made With Olive Oil."

In assessing whether an advertisement is materially misleading, the court uses an objective standard. Duran v. Henkel of America, Inc., 450 F. Supp. 3d 337, 348 (S.D.N.Y. 2020) (Engelmayer, J.). To be materially misleading, "the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." Orlander, 802 F.3d at 300 (quoting Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007)). The standard requires a "probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Bustamante v. KIND,

7

LLC, 100 F.4th 419, 426 (2d Cir. 2024). The court's analysis "focuses on the precise representations made on the packaging, and the context and specificity of the representations on the packaging are relevant to the inquiry." Vazquez v. Walmart, 704 F. Supp. 3d 417, 424 (S.D.N.Y. 2023) (Oetken, J.) (citing Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018)).

Clemmons claims that he purchased a Twin Pack of the Product with the statement "Made With Olive Oil" on the packaging and that he did so on multiple occasions between April 12, 2021, and October 13, 2021. (Pl. 56.1 ¶¶ 33-36; Def. 56.1 ¶¶ 33-36; ECF 52-2, Clemmons Tr. 79, 116.) Units of the Product featured a "best before" date of either six or eight months from the date of the Product's manufacture. (Pl. 56.1 ¶ 18; Def. 56.1 ¶ 18.) Even if Flora continued to sell product with the "Made With Olive Oil" labeling through 2019, an eight month "best before" date would have expired by August 31, 2020, seven and one-half months before Clemmons asserts he first purchased Product with the "Made With Olive Oil" label on April 12, 2021. In the absence of admissible evidence demonstrating a policy, pattern, or practice of BJ's selling plant butter products beyond their "best before" date, no reasonable jury could conclude that Clemmons purchased Flora's plant butter with the "Made With Olive Oil" label on or after April 12, 2021.

But Clemmons' claim to purchase a plant butter product with the "Made With Olive Oil" label is further undermined, according to Clemmons' BJ's Purchase History, by the fact that Clemmons had only purchased Twin Packs of the Product. (Pl. 56.1 ¶¶ 32-36; Def. 56.1 ¶¶ 32-36.) Flora has come forward with evidence that the Twin Pack has never been labeled with, "Made With Olive Oil." (Pl. 56.1 ¶ 15; Def. 56.1 ¶ 15.) The Twin Pack only contained tubs with the 2020 Packaging that read, "With Olive Oil," and the Twin Pack Sleeve has been

8

labeled only with the "With Olive Oil" phrase. (Pl. 56.1 ¶¶ 10-15; Def. 56.1 ¶¶ 10-15.)[3]

In response to Flora's evidence, Clemmons has failed to come forward with evidence, which if believed, would allow a reasonable jury to conclude that he purchased Product with the allegedly misleading statement, "Made With Olive Oil." Clemmons testified at his deposition that he purchased Twin Packs of the Product with a label that said, "Made With Olive Oil." (ECF 52, Clemmons Tr. 61-62.) He further states that "The stores don't necessarily take it off the shelf just like that. So it could have been on the shelf. It could have been an old product on the shelf. It could have been a new product that was on the shelf." (Id. at Tr. 65-66.) "I know I purchased products from BJ's that waive [sic][4] beyond expiration." (Id. at Tr. 66.) Clemmons testimony does not raise a material issue of fact in dispute for two distinct reasons. First, that the refrigerated plant-butter product "could have been on the shelf" seven-and a half months after the "best before" date is sheer speculation, not aided by vague testimony that at unspecified times he has observed unspecified products sold at BJ's beyond their expiration date. Second, Clemmons' testimony fails to come to grips with his own claim that the only purchases on which he relies were purchases of Twin Packs and he has not rebutted, or developed a plausible theory to rebut, Flora's evidence that Twin Packs was never sold with the "Made With Olive Oil" labeling. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) ("Though we must accept as true the allegations of the party defending against the summary judgment motion,

---

[3] Plaintiff's attorney also attempts to argue that the side of the Twin Pack still contains the "Made With" phrasing. (ECF 52 at 7; ECF 50, Sheehan Decl. ¶ 5.) Attached to Clemmons's attorney's affidavit are images of the Product with the 2020 Packaging "With Olive Oil" phrasing on the front label. (ECF 50, Sheehan Decl. ¶ 5.) The affidavit does not identify when or where this item was purchased or if it was contained in a Twin Pack. (Id. ¶¶ 5-6.) The packaging states, on the side of the tub, "We crafted this delicious plan butter made with ingredients like Olive Oil." (Id.) Flora provided a different image of the packaging of the Product tubs inside the Twin Pack, dated as of April 3, 2019, with the phrase "We crafted this delicious plant-based butter made from ingredients like olive oil." (ECF 46-2.). Regardless, neither packaging contains the phrase "Made With Olive Oil," and, therefore, both are different than the phrase alleged in the Complaint.
[4] The Court assumes Clemmons said or intended to say "are way" rather than "waived."

drawing all reasonable inferences in his favor . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."). Additionally, Clemmons's attorney's declaration, fairly read, merely posits that BJ's may not have removed items with expired sell-by dates on its shelf."[5] The attorney's speculation is insufficient to raise a triable issue of fact. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated."). Speculation as to the business practices of BJ's does not create "hard evidence showing that [the plaintiff's] version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). In the course of the discovery period, Clemmons had a full and fair opportunity to develop evidence—rather than speculation or conjecture—that BJs, as a matter of a business practice, sold refrigerated plant-based butter products more than six months after their "best before" date. Clemmons' speculation that a Product "could" have been sold eight months after its "best before" date necessarily encompasses four purchases of Twin Packs on April 12, 2021, May 3, 2021, July 14, 2021, and October 13, 2021. (Pl. 56.1 ¶¶ 29, 33-36; Def. 56.1 ¶¶ 29, 33-36.) No reasonable jury could find in Clemmons' favor based on his claim that he purchased Twin Packs with the challenged labeling between April 2021 and October 2021.

    As an alternate theory of liability, Clemmons now argues that there is no difference between the "Made With Olive Oil and the "With Olive Oil" labels describing it as a "distinction without a difference." (ECF 52 at 7.) But courts in this District have concluded that

---

[5] Clemmons' attorney's affidavit stated, "Given that there are no requirements that merchants remove any food items from its shelves if those items are adequately labeled, I am unaware of any practice, policy, or procedures employed by merchants such as BJ's to remove items which remain on store shelves after the relevant date . . ." (ECF 50, Sheehan Aff'd ¶ 20) and that "There was no need to remove any items which were past the "Best Before" date from shelves at BJ's based on the microbiological composition of the Product . . . ." (Id. ¶ 23). The attorney's declaration makes no affirmative statement of fact specific to refrigerated food spreads that is made on personal knowledge.

10

"[t]he absence or presence of the words 'made with' can make a substantial difference where the relevant term is both an ingredient and a flavor' because 'made with' 'designates a product as an ingredient.'" Mitchell v. Whole Foods Market Group, Inc., 20 Civ. 8496 (ER), 2022 WL 657044, at *5 (S.D.N.Y. Mar. 4, 2022) (quoting Campbell v. Whole Foods Market Group, Inc., 516 F. Supp. 3d 370, 383 n. 4 (S.D.N.Y. Feb. 2, 2021) (Woods, J.)).  Courts have found that when a claim begins with "Made With," it communicates to a reasonable consumer that the content of the item is "exclusively, or at least predominately" "Made With" the named ingredient.  See Mantika v. Kellog Co., 910 F.3d 633, 638-39 (2d Cir. 2018) (denying motion to dismiss when the label "Made With Whole Grain" could lead a reasonable consumer to believe a cracker was made exclusively or predominately with whole grain); Sharpe v. A&W Concentrate Co., 481 F. Supp. 3d 94, 103 (E.D.N.Y. 2020) (denying motion to dismiss when the label "Made With Aged Vanilla" could lead a reasonable consumer to believe any vanilla content of the at-issue product was from the vanilla plant).  Whereas the phrase "With" follow by a named ingredient, does not communicate to a reasonable consumer that the product is made only or exclusively with that ingredient.  Beers v. Mars Wrigley Confectionary US, LLC, 21-cv-2 (CS), 2022 WL 493555, at *4 (S.D.N.Y. 2022) (granting motion to dismiss when the phrase, "With Milk Chocolate" would not lead a reasonable consumer to believe the product is "made only or exclusively with milk chocolate").

"[T]he primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself."  Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013).  The Complaint alleges that the "Made With Olive Oil" language was misleading.  In order to survive a motion for summary judgment, the plaintiff must show that not only was he misled, but that "a significant portion of the general consuming public or of targeted customers,

11

acting reasonably under the circumstances, could be misled." In re Kind LLC "Healthy and All Natural" Litigation, 627 F. Supp. 3d 269, 282 (S.D.N.Y. 2022) (NRB), aff'd Bustamante, 100 F.4th. at 426. Clemmons own expert, Andrea Lynn Mathews, Ph.D., painstakingly reported how a consumer survey was constructed to test consumers' reactions to the phrase "Made With Olive Oil" as compared with the comparator phrase "With Olive Oil" and concluded that consumers were misled by the phrase "Made With Olive Oil." In Dr. Matthews' survey, when presented with the Product labeled "Made With Olive Oil" she found that 27.7% of surveyed consumers indicated that they believed that olive oil is the only oil in the Product. (ECF 52 ¶ 34.) Dr. Matthews found the phrase "With Olive Oil," reduced the percentage of consumers surveyed who indicated that belief to 12.4%. (Id. ¶ 35.) In her report, she concluded that "the impact of stating 'with olive oil' statistically decreases belief that all of the oil in the product is olive oil." (Id. ¶ 36.) In her deposition testimony, Dr. Matthews testified that she used "With Olive Oil" as a control for the survey and that she identified "With Olive Oil" as a "reasonable label that would not be making the potentially problematic claim." (ECF 46-13, Matthews Tr. 28-29.)

The Court declines to consider whether labeling "With Olive Oil" is materially misleading because the claim was not pled in the Complaint and thus was not the premise on which discovery was conducted. Lyman v. CSX Transportation, Inc., 364 F. App'x 699, 701-02 (2d Cir. 2010) (affirming district court's determination that it should not consider claims raised for the first time in opposition to summary judgment); see also Brandon v. City of New York, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2006) (Preska, J.) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."). For three years, Clemmons has been on notice that Flora was disputing that he purchased a product with the "Made With Olive Oil" labeling. Flora first raised this point in its first letter to the Court on

March 18, 2022. (ECF 8.) In response to that letter, plaintiff stated that he "does not believe amendment of the Complaint is necessary." (ECF 9.) When offered the opportunity to amend at the initial pre-trial conference, plaintiff again took the position that he did not wish to amend the Complaint. (ECF 19.) Flora's motion to dismiss asserted that the version of the Product Clemmons alleged was misleading was not likely to be available at the time Clemmons bought the product. (ECF 15 at 1 n.1.) The Court's Order of March 31, 2022, expressly gave Clemmons the opportunity to move to amend the complaint 21 days after Flora's filing (ECF 13 at ¶ 2) but Clemmons never elected to seek an amendment. It is now too late in the game for Clemmons to recraft his claim.

To be clear, the action before this Court is premised upon a claim that the "Made With Olive Oil" label was misleading. The Court concludes that no reasonable jury could conclude that Clemmons purchased Flora plant butter in the period from April 2021 to October 2021 with the label "Made With Olive Oil" and thus his claim fails and summary judgment will be granted to Flora. The Court need not and does not rule on the outcome if he had purchased Product with different labeling.

B. Alternatively, Clemmons Has Failed to Show Actual Injury.

As an alternative basis for summary judgment, Clemmons has failed to show actual injury. Under GBL sections 349 and 350, a plaintiff must prove that a defendant's misleading act caused actual injury. Segovia v. Vitamin Shoppe, Inc., 14-cv-7061 (NSR), 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017). "A plaintiff suffers an actual injury if, 'on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" Colpitts, 2023 WL 2752161, at *4 (quoting Duran, 450 F. Supp. 3d at 350). As Clemmons cannot show that the misleading representation was on the Product he

13

purchased, Clemmons fails to show that the misrepresentation alleged in the Complaint was the cause of any actual injury. More particularly, Clemmons has failed to present any evidence that he paid a "price premium" for the Product—the theory of actual injury that has been advanced by Clemmons. (Pl. 56.1 ¶ 65; Def. 56.1 ¶ 65.)

Clemmons testified that he would not have purchased the Product but for Flora's alleged mislabeling. (Pl. 56.1 ¶ 72; Def. 56.1 ¶ 72.) However, the New York Court of Appeals "has explicitly held that merely purchasing a mislabeled product is not an injury under section 349 or section 350 of the General Business Law absent further proof that the purchase in some way injured the plaintiff," such as by injury to a plaintiff's health or increased cost of the product based on the misrepresentation. Colpitts, 2023 WL 2752161, at *4 n. 3; see also Small v. Lorillard Tobacco Co. Inc., 720 N.Y.2d 892, 898 (1999) ("[The plaintiffs] posit that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349. We disagree.").

One way a plaintiff can show that they did not receive "the full value" of their purchase is by alleging a "price premium." Duran, 450 F. Supp. 3d at 350; see also Orlander, 802 F.3d at 302 (finding that the "price premium" theory applies to consumable goods claims). The standard is satisfied by demonstrating an overpayment, such as showing how the "deceptive practice" effects the market price of a product. Colpitts, 2023 WL 2752161, at *4. Although Clemmons testified that he would not have purchased the Product if not for the label, Clemmons has not provided any further evidence that he paid a price premium. Clemmons has not identified any comparative products or their corresponding prices to support the price premium theory of injury. (Pl 56.1 ¶ 70; Def. 56.1 ¶ 70); see id. (collecting cases); Weiner v. Snapple

14

Beverage Corp., 07 Civ. 8742 (DLC), 2011 WL 196930, at *3 (S.D.N.Y. Jan. 21, 2011) (granting summary judgment when the plaintiffs "offered no evidence of the prices of competing or comparable products that did not contain the alleged mislabeling"); cf. Ebin v. Kangadis Food, Inc., 13-cv-2311 (JSR), 2014 WL 737878, at *2 (S.D.N.Y. Feb. 25, 2014) (concluding that the plaintiff had sufficient evidence to overcome summary judgment when he provided a report of expert and raw data comparing the prices of the product at issue to those of a relevant competitor).

Clemmons contends that the opinion of his expert, Dr. Matthews, is enough to show a price premium. But it is undisputed that Dr. Matthews is not an economist and has not offered any opinion regarding the existence of a price premium attributable to the Product's olive oil claims. (Pl. 56.1 ¶¶ 67, 69; Def. 56.1 ¶¶ 67, 69.) Dr. Matthews has only proposed potential methodologies that economists may use to identify a price premium but has not conducted any such analysis. (Pl. 56.1 ¶ 68; Def. 56.1 ¶ 68.) As discovery has concluded, "a proposal to identify evidence at some yet-to-be-determined date is not sufficient to survive summary judgment when Plaintiff is required to come forward with admissible evidence to raise a genuine issue of fact for trial." Kelly v. Beliv, LLC, 21-cv-8134 (LJL), 2024 WL 1076217, at *10 (S.D.N.Y. Mar. 12, 2024) (granting summary judgment in a similar case where the same expert had proposed method for finding a price premium, but had not conducted the proposed analysis); see also Reyes v. Upfield US Inc., 22-cv-6722 (KMK), 2025 WL 786656, at *7 (S.D.N.Y. Mar. 12, 2025) (granting summary judgment in a similar case where an expert had submitted a proposed methodology to calculate a price premium, but had not conducted the proposed analysis).

Additionally, Clemmons contends that statutory damages are sufficient to show

actual damages.  However, while sections GBL 349 and 350 provide for statutory damages, the statutes themselves explicitly provide that a plaintiff must show actual injury to recover either actual or statutory damages.  GBL §§ 349 and 350; see also Colpitts, 2023 WL 2752161, at *4 ("Before a plaintiff can recover any damages . . . the New York Court of Appeals has explicitly and unambiguously stated that, a plaintiff must prove 'actual injury' to recover under the statute.").

The Court alternatively concludes that no reasonable trier of fact could conclude on the summary judgment record that Clemmons was actually injured by any mislabeling of the Product.

CONCLUSION

For the foregoing reasons, Flora's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to amend the caption as reflected herein at note 1, terminate the pending motion (ECF 45), enter judgment for defendant, and close this case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Date:   March 28, 2025
        New York, New York